IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO FERNANDEZ,

    Plaintiff,

v.                                                      No. 2:15-cv-1165-MCA-KRS

THE WESTERN GROUP, L.C. and
SOUTHWESTERN SHORTLINE
RAILROAD COMPANY d/b/a
SOUTHWESTERN RAILROAD,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss or in the Alternative for Sanctions ("Motion to Dismiss") (Doc. 55), filed April 7, 2017, and Motion to Strike Plaintiff's Sur-Reply to Defendants' Motion to Dismiss ("Motion to Strike") (Doc. 69), filed June 6, 2017.  On December 13, 2017, in accordance with 28 U.S.C. § 636(b)(1)(B), these motions were referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and recommend an ultimate disposition.  *See* Order of Reference, ECF No. 80.  Having reviewed the record and the parties' briefing, the undersigned recommends that the Court DENY Defendants' Motion to Dismiss and DISMISS Defendants' Motion to Strike as moot.

**Introduction and Background**

This case has its inception in Plaintiff's Original Complaint (Doc. 1), filed December 24, 2015, wherein Plaintiff alleges, in sum, that on September 9, 2015, he sustained "severe and painful injuries to his body and mind, and shock and injury to his nervous system and person,"

while in the course and scope of his employment with Defendant(s). (Doc. 1, p.4). During the course of discovery, Plaintiff disclosed, via deposition testimony, that he owned and coached youth football teams (hereinafter the "Westside Mustangs"). (Doc. 55-2, p. 2). Plaintiff further testified that he was not coaching in 2015, that "other coaches…coached the team" in 2016, and that he has served as "more [of a] director" since 2014. (*Id.*).

While not entirely clear from the record, it appears that on January 24, 2017, Defendants served Plaintiff with a Second [Set of] Interrogatories and Requests for Production, *see* Certificate of Service, ECF No. 38, which included a request for "[a]ny and all video and/or audio recordings of any practice or game for any age group of the Westside Mustangs for the 2014-2015 and 2015-2016 football seasons." (Doc. 55-5, p. 3). Initially, Plaintiff objected to the request but later added that he did not have any of the requested footage. (Doc. 58-6, p. 2). Plaintiff also informed Defendants that assistant coaches Mitchell Pete ("Coach Pete") and Todd Moultrie ("Coach Moultrie") may have shared video footage and that any such footage in existence would be in a Google Drive set up and maintained by Mr. Moultrie.[1] (*Id.*).

On or about March 9, 2017, Defendants issued subpoenas to Coaches Pete[2] and Moultrie, commanding the parties to produce any and all video and/or audio recordings relating to the Westside Mustangs' (ages ten to eleven) 2014-2015 and 2015-2016 seasons. (Doc. 58-10). In response, Coach Pete produced a flash drive which, Defendants assert, contains every game from the 2016 season. (Doc. 55, p. 6). Defendants further claim that the video depicts Plaintiff coaching the team from the sidelines without any obvious pain or discomfort. (*Id.*).

---

[1] The transcripts of the deposition testimony provided by Coaches Pete and Moultrie establish that it was Coach Pete who set up and maintained the drive. *See infra* p. 7.

[2] It appears that Defendants mistakenly refer to Mitchell Pete as both Gregory Pete and Mr. Mitchell. *See, e.g.*, Doc. 55, pp. 4-6.

Defendants now ask the Court to dismiss Plaintiff's complaint, alleging that Plaintiff provided false deposition testimony and interrogatory responses. In regard to the former, Defendants argue that Plaintiff falsely testified that he did not coach the Westside Mustangs in 2016. As to the latter, Defendants claim that Plaintiff falsely denied the existence of video footage from the Westside Mustangs' 2015 and 2016 seasons, and further assert that they are "convinced" that Plaintiff is withholding video footage from the 2015 season. (Doc. 58, pp. 11-12).

In support of their motion, Defendants cite to one federal case, *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995), for the proposition that dismissal is an appropriate sanction for a petitioner who "willfully provides false and misleading answers during the discovery process." (Doc. 55, p. 8). *Archibeque*, in turn, refers to cases such as *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976) and *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), which rely upon the sanction authority found in Fed. R. Civ. P. 37. *See Archibeque*, 70 F.3d 1172, 1174.

Understandably, then, Plaintiff construes Defendants' motion as a request for sanctions under Fed. R. Civ. P. 37. Yet, in their Reply in Support of Motion to Dismiss ("Reply") (Doc. 61), Defendants seem to deny that their motion derives its authority from the Federal Rules of Civil Procedure[3] and, instead, argue that the Court has "inherent equitable powers" to impose sanctions for "abusive litigation practices during discovery." (Doc. 61, pp. 3-4). Regardless of whether Defendants intended to base their request for sanctions on the Court's inherent power or its rule based authority, the Court finds that Defendants' factual arguments fail to invoke either.

---

[3] The Court notes that Defendants seem to intentionally skirt the issue of whether Fed. R. Civ. P. 37 applies to their request for the sanction of dismissal. *See* Reply, ECF No. 61, pp. 3-4 (stating simply that "Plaintiff construes the Motion as one under Fed. R. Civ. P. 37, but the Federal Rules of Civil Procedure are replete with references to conduct for which the Court has authority to impose sanctions" and citing, generally, several Rules of Civil Procedure which authorize sanctions for various violations).

## Analysis

The Court has the discretion to dismiss an action for discovery violations "predicated upon willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." *Archibeque*, 70 F.3d 1172, 1174 (internal quotation omitted). *See also Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009) ("A district court has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery."); Fed. R. Civ. P. 37(b)(2)(A)(v) (allowing a district court to dismiss an action if a party fails to obey an order to provide or permit discovery).

When determining whether the sanction of dismissal is appropriate, a district court should consider the following five factors: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." *Archibeque*, 70 F.3d 1172, 1174 (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Ehrenhaus*, 965 F.2d 916, 921 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)). Ordinarily, these factors should be evaluated on the record. *See Archibeque*, 70 F.3d 1172, 1174. However, such an evaluation presupposes the existence of a discovery violation by the party to be sanctioned. In the case at bar, Defendants have not shown that any violation arguably exists to trigger the process of evaluating whether the alleged violation is sanctionable.

Per Fed. R. Civ. P. 37(a), if a party fails to make disclosures or otherwise cooperate in the discovery process, the aggrieved party may move the court for an order compelling disclosure or

discovery.  If the court grants the motion and the offending party fails to obey the resulting order, sanctions, including dismissal, are available under Fed. R. Civ. P. 37(b).

Defendants, however, never availed themselves of the remedies set forth in Fed. R. Civ. P. 37.  In defense of their decision to bypass the Rule, Defendants state, somewhat confusingly, that because Plaintiff (allegedly) misrepresented facts under oath and disavowed the existence of Westside Mustangs' video footage, "there is nothing to compel from Plaintiff." (Doc. 55, p. 2, n.1).  On the contrary, if Plaintiff misrepresented himself or misrepresented the existence of evidence in a deposition or in responses to interrogatories, Defendants would be able to compel discovery responses under Fed. R. Civ. P. 37(a)(3)(B).  Yet, without a motion to compel discovery there can be no order, and without an order, no failure to obey that would justify sanctions under Fed. R. Civ. P. 37.

Setting aside the question of whether a party may rely solely on the Court's inherent power to sanction, to the exclusion of the remedies available under Fed. R. Civ. P. 37, the Court notes that Defendants have also failed to establish that Plaintiff engaged in any independently sanctionable conduct.  As noted above, Defendants first allege that Plaintiff lied, during his deposition and while under oath, regarding his coaching role in the Westside Mustangs' 2016 season.  In support, Defendants explain that the flash drive provided by Coach Pete contains "hundreds" of video clips from the 2016 season which depict Plaintiff "coaching the team" and "moving along with ease on the sideline." (Doc. 55, p. 6).  Although not a model of clarity, it appears that Defendants' argument in this regard is that Plaintiff provided false testimony in an attempt to conceal his physical abilities. While a review of Defendants' Exhibit B, ECF No. 55-2, reveals that Defendants may have benefitted from delving more deeply into the subject of Plaintiff's youth football activities, they chose not to further inquire.  And, Defendants have not

provided any evidence to indicate that Plaintiff misrepresented his coaching role, willfully or otherwise.

During his deposition, held November 1, 2016, Plaintiff volunteered, without qualification, that he "coaches"—present tense—youth football. (Doc. 55-2, p.2). He then explained that he only coaches when time permits and that "[t]his year other coaches have coached the team." (*Id.*). Plaintiff never denies that he is a coach but, rather, explains that he acts as more of a director than as a coach. This is in keeping with Coach Moultrie's testimony that he and Coach Pete have "pretty much…taken over" the physical aspects of coaching, while Plaintiff's role is "more or less administrative now." (Doc. 58-3, pp. 6, 8). Coach Pete, too, testified that Plaintiff did not engage in the physical aspects of coaching. (Doc. 58-4, pp. 4, 8).

Merriam-Webster defines the noun "coach" as "one who instructs or trains…especially: one who instructs players in the fundamentals of a sport and directs team strategy." Coaching, then, encompasses the distinct but interrelated functions of instruction and direction. Coaches Moultrie and Pete described the physical aspects of coaching in terms of on-the-field instruction during practices. Plaintiff's role was described in terms of telling the assistant coaches what to do and being the "person in charge." (Doc. 58-3, pp.4-5). Any perceived disconnect between Plaintiff's deposition testimony regarding his role in the Westside Mustangs and the role of "other coaches" is as likely a matter of semantics as it is deceit. Similarly, while Defendants put a great deal of emphasis on Plaintiff's sideline coaching, Coach Moultrie included this activity in his explanation of Plaintiff's duties and still categorized Plaintiff's role as non-physical and administrative. (Doc. 55-3, pp. 4, 5).

Defendants next argue that Plaintiff is "misrepresenting the existence of video footage" of the Westside Mustangs' 2015 season and that he is either withholding or has destroyed this

evidence.  (Doc. 55, p. 11).  Defendants' argument here is that it is "inconceivable" and unbelievable" that Plaintiff would not have this footage in light of the existence of the 2016 video footage.  (*Id.*).  Not only is Defendants' argument based on pure speculation, but it also misstates Plaintiff's stance on the footage in question.

Plaintiff did not deny that video footage existed; rather, Plaintiff denied having possession of any video footage.  (Doc. 58-6, p. 2).  Additionally, Coaches Moultrie and Pete represented that the Westside Mustangs' games are usually filmed by one or more of the players' parents, not by a videographer.  (Doc. 58-3, p. 3, Doc. 58-4, p. 5).  Coach Moultrie expressed that he does not have a Westside Mustangs' film library but, from "time to time," a parent will pass something on that they recorded.  (Doc. 58-3, p. 9).  Coach Pete explained that he was able to obtain some of the parents' video footage on a memory stick which he made available on a Google Drive.  (Doc. 58-4, p. 6).  It is, presumably, this footage that Coach Pete provided to Defendants.

Although Defendants find it "inconceivable" that there is no 2015 video footage like the 2016 footage provided by Coach Pete, they do not challenge the veracity of the testimony offered by the assistant coaches.  More importantly, Defendants overlook the fact that Coach Pete, who created and maintained the 2016 video storage drive, did not begin coaching the Westside Mustangs until the 2016 season.  (Doc. 58-4, p. 3).

Defendants also claim that Plaintiff lied about the existence of video footage from the Westside Mustangs' 2016 season.  *See* ECF No. 55 at 10 (stating that the 2016 video footage is "vital evidence to the defense that <u>Plaintiff denied existed</u>.").  In their Reply, Defendants again state that Plaintiff lied about the existence of the 2016 footage but then seem to switch gears and argue that he lied about possessing this evidence.  (Doc. 61, p. 7).  Defendants' support their

conflated assertion by pointing to their Exhibit D, ECF No. 55-4 at 13:11-25. This citation is to Coach Pete's testimony regarding the Google Drive he established and made "available" to unspecified individuals. Defendants did not follow up on this information with questions regarding to whom the footage was available, how, specifically, the footage was made available, or who actually accessed the footage. Moreover, Defendants do not explain how an offer of access, assuming one was extended to Plaintiff, equals actual possession. It appears that Defendants are attempting to fill in the holes of their questioning with allegations of deceit.

## Conclusion

Defendants have failed to demonstrate that Plaintiff engaged in any sanctionable conduct in connection with the discovery process. Defendants never invoked Fed. R. Civ. P. 37, and Defendants' evidence does not establish that Plaintiff provided false discovery responses. Plaintiff admitted to being a coach, explained that "other coaches" were coaching in 2016—an apparent reference to the hands-on coaching provided by Coaches Moultrie and Pete—and, notably, appears to blame time, not his physical state, as the impediment to his coaching regime. (Doc. 55-2. p. 2). Further, Defendants have provided nothing to demonstrate that any of the coaches maintained a collection of video footage from the Westside Mustangs' 2015 season.

At most, the evidence provided by Defendants establishes that they ignored avenues that could have, and probably should have, been explored. These avenues include the exact nature of Plaintiff's coaching role in comparison to the "other coaches," specific youth football activities Plaintiff engaged in during 2015 and 2016, Coach Pete's statement that he made the 2016 video footage "available," and the possibility of existing 2015 footage. Defendants cannot prevail on their motion now by alleging that unasked questions translate to untruthful answers.

Discovery violations are serious impediments to the judicial process and the Court is vested with both the responsibility for quashing such violations and the authority to do so. As presented, Defendants' evidence fails to implicate either.

### Recommended Disposition

For the reasons set forth above, the Court hereby RECOMMENDS that Defendants' Motion to Dismiss be DENIED. In light of the recommended denial, the Court FURTHER RECOMMENDS that Defendants' Motion to Strike be DISMISSED as moot.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen-day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE